**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TENISHA L. GILES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:26-CV-00660 JMB |
| | ) | |
| LADY JANE'S HAIRCUTS FOR MEN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Self-represented Plaintiff Tenisha Giles brings this employment discrimination action under Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §§ 2000e, *et seq.*, the Americans with Disabilities Act of 1990 (ADA), as amended, 42 U.S.C. §§ 12101, *et seq.,* 42 U.S.C. § 1981 (referred to as § 1981) and the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601, *et seq.*

After reviewing Plaintiff's filings, the Court will require her to file a signed amended complaint on an Employment Discrimination Court-form within 30 days of the date of this Memorandum and Order. In support of her amended complaint, Plaintiff must additionally file a new, signed, Application to Proceed in District Court Without Prepaying Fees or Costs. Additionally, she must file copies of her Equal Employment Opportunity Commission (EEOC) Notice of Right to Sue and Charge of Discrimination as attachments to her amended complaint. Plaintiff's failure to comply with this Order in all relevant aspects will result in a dismissal of this lawsuit, without prejudice.

**The Complaint**

Plaintiff is a self-represented litigant who brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §§ 2000e, *et seq.,* the Americans with Disabilities Act of 1990 (ADA), as amended, 42 U.S.C. §§ 12101, *et seq.,* 42 U.S.C. § 1981 (referred to as § 1981) and the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601, *et seq.* She names her former employer, Lady Jane's Haircuts for Men as the Defendant in this action. Lady Jane's Haircuts for Men is a sports-themed hair salon chain specializing in grooming services specifically for men. Plaintiff, an African American, woman, claims that she began working at Lady Jane's as a hair stylist in June of 2010. [

ECF No. 1-1 at 2]. In her over 14 years with the company, she claims that she eventually became a Regional Director. *Id.*

Plaintiff asserts that she was subjected to race and color discrimination when she was exposed to discriminatory comments, treated as a "token" black female corporate employee, denied equal support and opportunities, criticized for hiring black employees and was terminated from her employment. [ECF No. 1-1 at 15]. Plaintiff also alleges that she was subjected to a racially hostile work environment. *See id.* Plaintiff appears to base her claims on statements from a supervisor named Cari Benedict, who she worked for starting in 2019, who told Plaintiff she hired "too many black people," [ECF No. 1 at 5]. Plaintiff asserts that Benedict also took away a promotion, failed to provide a promotion to the Chicago market and made black, female corporate employees cut hair (perform as a stylist) but failed to require the same for male, corporate employees.[1] *Id.*

---

[1] To the extent Plaintiff is attempting to bring a sex discrimination claim under 42 U.S.C. § 1981, she is

Plaintiff asserts that on or about February 8, 2025, she suffered a rotator cuff injury to her shoulder which impeded her ability to cut hair. [ECF No. 1-1 at 10-11]. She claims that she informed her employer of her injury and that she would need to stop cutting hair for approximately 6 weeks. *Id.* at 11. Despite her understanding that cutting hair was not an essential function of her job as a Regional Director, Plaintiff states that she suffered harassment because she was unable to cut hair due to her injury. *Id.* Plaintiff sought FMLA protection on April 17, 2025, due to her shoulder injury. *Id.* Plaintiff asserts that she attempted "in good faith" to provide the requested paperwork. *Id.* at 12. However, Plaintiff claims that Defendant failed to provide her the opportunity to "cure any alleged deficiency in the FMLA paperwork before terminating her employment" on or about May 17, 2025. *Id*. at 12-14. According to Plaintiff, she was told that she was being terminated because her FMLA paperwork was not signed by her doctor. *Id*. at 14.

Plaintiff alleges that she opposed Defendant's discriminatory practices, including the treatment of black/female employees, race-based hiring statements and the harassment by Benedict, *see* ECF No. 1-1 at 16-18, but she was subjected to adverse actions up to and including termination of her employment. *Id*. Plaintiff also claims that Defendant interfered with her FMLA rights by failing to allow her to cure deficiencies in her paperwork and instead terminated her employment. [ECF No. 1-1 at 20]. She also claims FMLA retaliation and discrimination. *Id.* at 21-22. Besides her termination from her employment, Plaintiff has not indicated what she refers to as purported FMLA retaliation and discrimination.

---

unable to do so as sex discrimination claims are unavailable under this statute. *See Runyon v. McCrary*, 427 U.S. 160, 167 (1976); *Movement for Opportunity and Equality v. General Motors Corp.,* 622 F.2d 1235, 1278 (7th Cir. 1980).

Last, Plaintiff alleges a failure to accommodate her disability under the ADA, as well as retaliation for exercising her rights under the ADA when she attempted to stop cutting hair after her rotator cuff injury. [ECF No. 1-1 at 22-23]. She asserts that even though cutting hair was not an essential function of her job, and despite her request for accommodation, she was pressured to continue cutting hair. *Id.* When Plaintiff was ultimately unable to cut hair due to her shoulder injury and she requested medical leave, Plaintiff claims she was retaliated against and terminated from her employment. *Id.*

Plaintiff seeks damages in this action against Defendant.

**Application to Proceed in District Court Without Prepaying Fees or Costs**

With the commencement of this action, Plaintiff filed an Application in District Court to Proceed Without Prepaying Fees and Costs. [ECF No. 2]. The Application is unsigned and incomplete, as Plaintiff has failed to indicate any sources of income on her Application. She has failed to check either yes or no on many of the boxes on part 3 of the form marked "Other Income." *Id.* at 1. Additionally, although she has indicated that she has monthly bills, she has not indicated how she pays for her monthly bills. If she has a spouse or significant other who pays for the costs of those bills, she should note this on the Application. Otherwise, Plaintiff must list all income and assets used to pay her current monthly expenses. For the aforementioned reasons, the Court will deny Plaintiff's Application without prejudice. The Court will provide Plaintiff 30 days to either pay the $405 filing fee or submit a new, signed, and complete Application.

**Legal Standard**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To

state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The Court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of liberal construction does not mean that procedural rules

-5-

in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

While a plaintiff "need not set forth "detailed factual allegations," or "specific facts" that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests." *Gregory v. Dillard's, Inc.,* 565 F.3d 464, 473 (8th Cir. 2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) and *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). A district court, therefore, is "not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Gregory*, 565 F.3d at 473. But when there are "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft*, 556 U.S. at 679.

At the pleading phase, a plaintiff need not plead facts establishing a prima facie case for their employment discrimination claim. *See Wilson v. Arkansas Dep't of Human Services*, 850 F.3d 368, 372 (8th Cir. 2017); *Ring v. First Interstate Mortgage, Inc.,* 984 F.2d 924, 926–27 (8th Cir. 1993). In *Swierkiewicz*, the Supreme Court "negated any need to plead a prima facie case in the discrimination context and emphasized that the prima facie model is an evidentiary, not a pleading, standard." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002)). Because the prima facie model is not a pleading standard, "there is no need to set forth a detailed evidentiary proffer in a complaint." *Id. See Ring*, 984 F.2d at 926–27.

The "elements of the prima facie case are [not] irrelevant to a plausibility determination in a discrimination suit." *Blomker*, 831 F.3d at 1056. The allegations in a complaint must "'give

plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas*,' which in turn 'reduces the facts needed to be pleaded under *Iqbal*.'" *Wilson*, 850 F.3d at 372 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 310, 312 (2d Cir. 2015)). *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The elements are "part of the background against which a plausibility determination should be made." *Blomker*, 831 F.3d at 1056 (quoting *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) ("This approach is fully consistent with *Swierkiewicz's* dictates")). The elements of a prima facie case "may be used as a prism to shed light upon the plausibility of the claim." *Id.* (citation omitted). Through this prism, the complaint "must include sufficient factual allegations to provide the grounds on which the claim rests." *Id.* (emphasis in original) (quoting *Gregory*, 565 F.3d at 473).

**Discussion**

1. **Failure to Sign Complaint or Application to Proceed in District Court Without Prepaying Fees or Costs**

Federal Rule of Civil Procedure 11 requires that a "written motion . . . must be signed . . . by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). Likewise, Local Rule 2.11 explains that documents "must be physically signed" if endorsed by someone "other than an attorney of record." See also id. (recognizing a "person's name on a signature block" as a signature only for "authorized filing[s] . . . through [that] person's electronic filing account"). As a pro se litigant without an electronic filing account, Plaintiff is required to physically sign her filings. *See Pack v. City of St. Charles*, No. 4:25-CV-911-MTS, 2025 WL 2549230, at *1 (E.D. Mo. Sept. 4, 2025) (collecting cases).

The Court will strike Plaintiff's complaint because it does not contain an original signature. Plaintiff will be provided 30 days to file an amended complaint on an Employment Discrimination

-7-

Court-form, containing her original signature. *See* E.D.Mo. L.R. 2.06(A) ("All actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms where applicable. If an action is not filed on a Court-provided form, the Court, in its discretion, may order the self-represented plaintiff or petitioner to file the action on a Court-provided form."). Plaintiff may also file her typewritten document titled, "Pro Se Complaint and Jury Demand" as a supplement to her Court-form, but she must sign this document if she wishes for it to be considered by the Court. Plaintiff's failure to file her amended complaint on the Court-form within 30 days with an original signature, will result in a dismissal of this action.

Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs will also be stricken due to a lack of original signature. Additionally, as noted above, Plaintiff must fill out all portions of the Application and designate whether she has a spouse or significant other who pays her monthly expenses. Plaintiff will have 30 days to file a new, signed Application with this Court, or pay the $405 filing fee.

## 2. Venue Allegations

It is unclear where the alleged discriminatory conduct occurred in this case. On the Application to Proceed Without Prepaying Fees or Costs, Plaintiff specifies that she received unemployment in the State of Michigan. [ECF No. 2 at 2]. However, in the "Pro Se Complaint and Jury Demand," which was filed as a supplement to her complaint, *see* ECF No. 1-1 at 5-9, Plaintiff provides facts evidencing that she presided over different sales markets for Defendant, and that Defendant's home office was in the State of Michigan, which appears to be where Defendant's employment records were kept.

Plaintiff states that she was first hired by Defendant in June of 2010 as a stylist when she lived in Detroit, Michigan. [ECF No. 1-1 at 6]. From approximately 2014 through 2017, Plaintiff was a Travel Trainer, and she claims that she "led training programs, standardized procedures, developed team-performance strategies across multiple locations." [ECF No. 1-1 at 7]. It is unclear where she lived during this time or to whom she reported in Defendants' company, or where her supervisor was located. Moreover, there is no indication of what locations she supervised. Nonetheless, it appears that the employment records relating to Plaintiff were in Michigan.

In February of 2017, Plaintiff claims that she was promoted to Regional Director of Operations in St. Louis, Missouri. *See id.* Again, Plaintiff has not indicated where she was supervised from or where her employment records were kept. Plaintiff states that she was promoted to Regional Director for Kansas City, Missouri in 2018. *See id*. However, Plaintiff alleges she was removed from this role in 2019. *Id.* Plaintiff does not indicate what role she was in between 2019 and 2024. But she claims that she was promoted to Regional Director for Nashville, Tennessee in 2024.[2] *Id.* It is unclear where Plaintiff lived during this time and where her supervisors were located. Again, because it appears that the base of operations for Defendant was in Michigan, it is likely that the employment records for its workers were also located there.

Plaintiff asserts that she was subjected to race and color discrimination when she was subjected to discriminatory comments, treated as a "token" black female corporate employee, denied equal support and opportunities, criticized for hiring black people and unlawfully had her employment terminated. [ECF No. 1-1 at 15]. Plaintiff also alleges that she was subjected to a

---

[2] It is unclear if this is the job that Plaintiff was doing at the time of her termination.

racially hostile work environment. *See id*. Plaintiff appears to base her claims on statements from a supervisor named Cari Benedict, in 2019, who told Plaintiff she hired "too many black people," [ECF No. 1 at 5], took away a promotion, failed to provide a promotion to the Chicago market, and made black, corporate employees cut hair but failed to do the same for male, corporate employees.[3] *Id*. It is unclear if the claims and actions of Cari Benedict occurred in the State of Missouri to constitute substantial operative acts of discrimination or a hostile work environment within the State of Missouri. It is also unclear if Cari Benedict worked in Missouri or if she worked at corporate headquarters, which appear to be in the State of Michigan. Similarly, it is unclear if the supervisory acts that Benedict took over Plaintiff occurred within the State of Michigan and if Plaintiff's employment records were kept there.

As for the decision to terminate Plaintiff, which apparently occurred sometime between April and May of 2025, it is also not apparent where these employment decision took place. Once again, Plaintiff has failed to name who at Lady Jane's made the supervisory decisions over her with respect to her request for FMLA leave and her ADA requests, where these employees worked and where the employment documents were kept relative to these requests.

Liberally construing the allegations of the complaint, it is not clear whether venue is proper in this Court. Claims arising under Title VII are governed by the specific venue provisions in 42 U.S.C. § 2000e-5(f)(3). Section 2000e-5(f)(3) provides that Title VII claims may properly be brought in any judicial district in which: 1) "the unlawful employment practice is alleged to have

---

[3] It is unclear where Plaintiff's supervisor was located, where she took the employment actions relating to Plaintiff, where the employment documents regarding Plaintiff were located, where the corporation's Human Resource office is located, where the hiring/firing occurred, etc.

been committed," 2) "the employment records relevant to such practice are maintained and administered," or 3) "the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. 2000e-5(f)(3).[4] If Plaintiff was employed by Defendant in Oakland County, Michigan, and that is where the allegedly discriminatory conduct occurred (such as the employment decisions Plaintiff complains of), then venue would be proper only in the Eastern District of Michigan. *See* 28 U.S.C. § 102(a)(1).[5]

If this Court is not the proper venue for this action, then the Court could transfer this action to the proper venue, or dismiss this action, if in the interest of justice. *See* 28 U.S.C. § 1406(a). As a result, the Court will require Plaintiff to show cause, within 30 days of the date of this Order, as to whether this Court is the proper venue for this action. Plaintiff must clarify the location where the allegedly discriminatory conduct occurred and where the employment records for Lady Jane's

---

[4] Section 2000e–5–(f)(3) also governs venue in cases brought under the ADA. *See* 42 U.S.C.§ 12117(a) ("The powers, remedies, and procedures set forth in section[ ] ... 2000e–5 ... of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter...."). Venue for claims arising under the FMLA is governed by the general venue statute codified at 28 U.S.C. § 1391. *See James v. Verizon Servs. Corp.,* 639 F. Supp. 2d 9, 15 (D.D.C. 2009) (stating, in an action brought against a private defendant, that "[v]enue for [ ] FMLA claim[s] are governed by the general venue [statute] codified at 28 U.S.C. § 1391(b)"). Pursuant to 28 U.S.C. § 1391(b), a civil action may be brought in: (1) a judicial district in which any Defendant resides, if all Defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought, any judicial district in which any Defendant is subject to the Court's personal jurisdiction.

[5] When a court concludes that venue is improper, it may dismiss the case or transfer it to another district pursuant to 28 U.S.C. § 1406(a). Separately, under 28 U.S.C. § 1404(a), courts may transfer a case even when venue is proper if doing so would serve the convenience of the parties and witnesses or promote the interest of justice. See 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."). The distinction between the two venue statutes allows courts flexibility to address both improper and inconvenient venues.

are kept. Plaintiff should also clarify where Lady Jane's Human Resource Office is, where the corporate officers work, where she was working at the time of her termination, and where her supervisors were working when the alleged unlawful employment actions occurred.

### 3. Plaintiff Must Amend Her Complaint on a Court-Provided Employment Discrimination Complaint Form

Because Plaintiff failed to fill out the Court's Employment Discrimination Complaint form, and as Plaintiff's complaint is scattered and difficult to discern, the Court will require Plaintiff to amend her complaint on the Court's Employment Discrimination Complaint form. In completing her amended complaint, Plaintiff must follow Rules 8 and 10 of the Federal Rules of Civil Procedure. Her self-represented status does not excuse her from following the Federal Rules of Civil Procedure or the Local Rules of this Court. *See Ackra Direct Mktg. Corp. v. Fingerhut Corp.,* 86 F.3d 852, 856-57 (8th Cir. 1996).

Rule 8 requires Plaintiff to set forth a short and plain statement of the claim showing entitlement to relief, and it also requires that each averment be simple, concise, and direct. Rule 8(a)(2) sets forth a "notice pleading standard" and simply requires "a short and plain statement of the claim showing that the pleader is entitled to relief." "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002).

Rule 10(b) requires Plaintiff to state her claims in separately numbered paragraphs, each limited as far as practicable to a single set of circumstances. Each count shall then set forth in separate, numbered paragraphs: 1) the relevant facts supporting the claim; 2) the constitutional, statutory, or other rights that Defendant violated; and 3) the relief Plaintiff seeks for the claim (for

example, money damages or equitable relief). Plaintiff shall follow the same format with respect to each claim.

In stating the facts of a claim, Plaintiff must describe the conduct she alleges is unlawful and the date(s) such conduct occurred, if known. In other words, Plaintiff must describe the adverse employment action(s) she believes was taken, when it was taken, why it amounted to discrimination or other unlawful conduct, and the basis for such discrimination or unlawful conduct, that is, sex and/or race discrimination under Title VII, retaliation under Title VII, retaliatory discharge under Title VII, race discrimination under § 1981, FMLA interference, FMLA retaliation, etc.

The Court will direct the Clerk of Court to provide Plaintiff with an Employment Discrimination Complaint form, and Plaintiff will have 30 days from the date of this Memorandum and Order to file an amended complaint on the form provided. The amended complaint must be signed under penalty of perjury and completed in accordance with the instructions provided in the form as well as the instructions provided in this Memorandum and Order. Plaintiff is cautioned that the filing of the amended complaint completely replaces all earlier filed pleadings in this action. Claims that are not realleged are deemed abandoned. *E.g., In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922, 928 (8th Cir. 2005).

### 4. Exhaustion of Title VII and ADA Claims

Prior to bringing a Title VII case to federal court, a litigant is required to properly exhaust her administrative remedies with the Equal Employment Opportunity by filing a Charge of Discrimination with the EEOC and receiving a Right to Sue letter. *Stuart v. General Motors Corp.,* 217 F.3d 621, 630 (8th Cir. 2000). Additionally, the litigant is then required to file her lawsuit in

federal court within 90 days of receipt of her Right to Sue letter. *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 222 (8th Cir. 1994) (citing 42 U.S.C. § 2000e–5(f)(1)); *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 919 (8th Cir. 2018); *see also Randolph v. Rogers,* 253 F.3d 342, 347 n.8 (8th Cir. 2001) ("Title VII of the Civil Rights Act of 1964 and Title I of the ADA both require exhaustion of administrative remedies").

Although Plaintiff states that she received a Notice of Right to Sue from the EEOC on January 30, 2026, she has failed to provide a copy of her Right to Sue Letter to this Court. Thus, the Court has not been able to ascertain if this action was timely filed. Additionally, Plaintiff has failed to provide the Court with a copy of her Charge of Discrimination. Thus, the Court is unable to ascertain if the claims she is pursuing under Title VII and the ADA are "like or reasonably related" to the claims in this lawsuit. *See Duncan v. Delta Consolidated Indus., Inc.,* 371 F.3d 1020, 1024 (8th Cir. 2004). Plaintiff's failure to provide copies of her Right to Sue Letter and her Charge of Discrimination within 30 days of the date of this Order will result in the dismissal of Plaintiff's Title VII and ADA claims.

5. **Plaintiff Has Failed to Properly Allege a Hostile Work Environment Under Title VII or 42 U.S.C. § 1981**

To establish a prima facie case for hostile work environment, a Plaintiff must show: 1) she belongs to a protected group; 2) she was subject to unwelcome harassment; 3) a causal nexus exists between the harassment and the protected group status; 4) the harassment affected a term, condition, or privilege of employment; and 5) her employer knew or should have known of the harassment and failed to take proper action. *Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 799 (8th Cir. 2021). "At the pleading phase, the court must determine whether the alleged harassment is 'severe or pervasive enough to create an objectively hostile or abusive work

-14-

environment and the victim must subjectively believe [her] working conditions have been altered.'" *Id.* (quoting *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016)). The Eighth Circuit explained the "high threshold for a ... harassment claim based on hostile work environment, as follows:

> To determine whether a complaint alleges an objectively hostile work environment, the court looks at the "totality of the circumstances." The court may consider circumstances such as the "frequency and severity of the discriminatory conduct," whether the conduct was "physically threatening or humiliating, as opposed to a mere offensive utterance," and whether the "conduct unreasonably interfered with the employee's work performance." A hostile work environment claim must allege more "than a few isolated incidents." The alleged harassment "must be so intimidating, offensive, or hostile that it poisoned the work environment." The Supreme Court has "cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment." The "standards for a hostile environment are demanding, and conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment." Courts must "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." Even "vile or inappropriate" behavior may be insufficient to rise to the level of an actionable hostile work environment claim.

*Warmington*, 998 F.3d at 799.

Plaintiff has failed to properly allege how her work environment was racially abusive. Rather, she has included in her complaint what appears to be one racially offensive statement, as well as one grievance from a supervisor that she hired too many African Americans. She has not included any facts in her complaint indicating that she was subjected to racially based jokes or inappropriate behavior based on her race, and she has failed to include any facts alleging that Defendant acted in a physically threatening or humiliating manner due to her race. As currently stated, Plaintiff has failed to show a racially hostile work environment under Title VII or § 1981.

Plaintiff should amend her complaint to include all claims she has alleging a racially hostile work environment under Title VII and § 1981.

-15-

**6.   Plaintiff Has Failed to Identify Her Job Title and Job Functions in Her Complaint for the Purposes of the ADA**

The ADA makes it unlawful to discriminate against a qualified individual "on the basis of disability." 42 U.S.C. § 12112(a). A "qualified individual" is a person "who, with or without reasonable accommodation, can perform the essential functions" of his or her job. 42 U.S.C. § 12111(8). Under the ADA, prohibited discrimination includes discrimination against a qualified individual because of his or her disability (i.e., intentional discrimination), *see* 42 U.S.C. § 12112(a)–(b)(1), as shown by evidence of disparate treatment or other proof that will vary according to the specific facts of the case. *Young v. Warner-Jenkinson Co., Inc.,* 152 F.3d 1018, 1022 (8th Cir. 1998). Prohibited discrimination also includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless doing so "would impose an undue hardship on the operation of the" employer's business. 42 U.S.C. § 12112(b)(5). To succeed under Title I of the ADA, an employee must demonstrate: 1) a qualifying disability under the ADA, 2) the ability to perform essential job functions with or without reasonable accommodation, and 3) an adverse employment action due to the disability. *McPherson v. O'Reilly Auto., Inc.,* 491 F.3d 726, 730 (8th Cir. 2007).

Plaintiff has failed to indicate her job title during the time she believes she was discriminated against on the basis of her alleged disability.[6] Further, she has failed to identify the essential functions of the job at the time of the supposed discrimination and/or retaliation, what accommodations she sought from her employer, what she was purportedly told with regard to their

---

[6] The Court presumes that Plaintiff's alleged disability was her shoulder injury. If this is incorrect, Plaintiff should properly identify her purported disability in her amended complaint.

-16-

failure to accommodate her alleged disability and exactly how she believes she was retaliated against.

### 7. Plaintiff Fails to Specifically Allege How the Defendant Interfered with Her Rights Under the FMLA

Plaintiff alleges that Defendant interfered with her FMLA rights. The FMLA makes it unlawful for an "employer" to "interfere with, restrain, or deny [one's] exercise of or the attempt to exercise" his or her rights under the Act. 29 U.S.C. § 2615(a)(1). It also prohibits discrimination against "any individual for opposing any practice made unlawful" under the Act. 29 U.S.C. § 2615(a)(2). Plaintiff claims that Defendant discriminated against her when she attempted to use her FMLA rights, interfered with her FMLA rights, and retaliated against her for using them. However, Plaintiff's facts are somewhat obscure relating to her request for FMLA and exactly how Defendant interfered with those rights.

Although Plaintiff states that she suffered a rotator cuff injury on or about February 8, 2025, which impeded her ability to cut hair, *see* ECF No. 1-1 at 10-11, she asserts that she did not seek FMLA protection until April 17, 2025. *Id*. at 11. It is unclear why she sought FMLA protection approximately two months after her injury. And she does not explicitly claim that she submitted the FMLA paperwork to Defendant from her doctor. Instead, she states that she attempted "in good faith" to provide the requested paperwork. *Id.* at 12. Thus, the Court is unable to ascertain exactly how Defendant either interfered with her FMLA rights or retaliated against her for attempting to exercise those rights.

The FMLA provides that "employees may take up to twelve weeks of unpaid leave for, among other things, 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000)

-17-

(citation omitted). "Given the standard, it logically follows that not all leave requested or taken for medical reasons qualifies for the FMLA's protections," and "[f]or this reason, employers have a statutory right to require an employee requesting FMLA leave to obtain certification that attests to the employee's eligibility for such leave from a health care provider." *Id.* (citing 29 U.S.C. § 2613(a)). Such a certification is legally sufficient if it states: 1) the date on which the serious health condition commenced; 2) the probable duration of the condition; 3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; and a statement that the employee is unable to perform the functions of the position of the employee. *See Clark v. Macon Cty. Greyhound Park, Inc.,* 727 F. Supp. 2d 1282, 1290 (M.D. Ala. 2010) (referencing 29 U.S.C. § 2613(b)(1)-(4)).

"Once provided with a request for such a certification, the employee must 'provide, in a timely manner, a copy of such certification to the employer.'" *Id.* (quoting 29 U.S.C. § 2613(a)). "The Department of Labor regulations are more specific in that they require the employee to provide the requested certification within fifteen calendar days of the employer's request for certification unless it is not practicable under the circumstances or unless the employer allows a longer period of time for the return of the certification." *Id.* (citing 29 C.F.R. § 825.305(b)). "'At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification.'" *Id.* (citing 29 C.F.R. § 825.305(d)). "[T]he failure to timely return the medical certification is evidence that undermines any claim that the [p]laintiff was entitled to benefits." *Robey v. Weaver Popcorn Co.,* No.: 1:16-CV-281-TLS, 2017 WL 4539914, at *4 (N.D.Ind. Oct. 11, 2017) (citation omitted).

Plaintiff asserts that Defendant failed to provide her the opportunity to "cure any alleged deficiency in the FMLA paperwork before terminating her employment" on May 17, 2025. [ECF No. 1-1 at 12-14. But she does not provide any indication that she turned in her FMLA paperwork. Plaintiff should clearly state such facts in her amended complaint.

### 8. Plaintiff Has Failed to Properly Identify How She Was "Retaliated" and "Discriminated" Against for Attempting to Exercise her FMLA Rights

The FMLA "makes it unlawful for an employer to 'interfere with, restrain, or deny the exercise of or the attempt to exercise' rights provided under the FMLA." *Pulczinski v. Trinity Structural Towers, Inc.,* 691 F.3d 996, 1005 (8th Cir. 2012) (quoting 29 U.S.C. § 2615(a)(1)). Although Plaintiff refers to her claims as both "retaliation" and "discrimination," the Eighth Circuit has counseled that in essence, this is merely a discrimination claim:

> when an employer takes adverse action against an employee because the employee exercises rights to which [s]he is entitled under the FMLA[. . .] In this scenario, the employer does not prevent the employee from receiving FMLA benefits. Rather, it is alleged that after the employee exercised [her] statutory rights, the employer discriminated against [her] in the terms and conditions of employment. An employee making this type of claim must prove that the employer was motivated by the employee's exercise of rights under the FMLA. The textual basis for such a claim is not well developed in our cases, but the claim likely arises under the rule of § 2615(a)(1) that an employer may not interfere with, restrain, or deny the exercise of or the attempt to exercise rights defined by the FMLA.

*Lovelace v. Washington School of Medicine*, 931 F.3d 698, 705 (2019) (citing *Pulczinski*, 691 F.3d at 1006 (cleaned up)).

To establish a prima facie case of FMLA discrimination, Plaintiff must show: 1) that she engaged in activity protected under the Act, 2) that she suffered a materially adverse employment action, and 3) that a causal connection existed between the Plaintiff's request and the adverse

-19-

employment action. *Pulczinski*, 691 F.3d at 1007. The Plaintiff must prove that her exercise of FMLA rights played a part in the employer's decision to terminate her from her employment. *Id*.

To establish a causal link, Plaintiff must present evidence that gives rise to an inference of a retaliatory motive in taking adverse action. *Lovelace*, 931 F.3d at 705–06. Generally, "more than a temporal connection is required to present a genuine factual issue on retaliation." *Tyler v. Univ. of Arkansas Bd. of Trustees*, 628 F.3d 980, 986 (8th Cir. 2011) (citations omitted) (internal quotations omitted). As the amount of time between the protected act and the adverse action increases, "the inference of retaliation becomes weaker and requires stronger alternate evidence of causation." *Id.* The ability to use this temporal inference in place of other evidence of causation "vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months." *Id.*

Plaintiff has failed to provide information in the complaint relative to her request for FMLA leave. She has also failed to provide facts related to her employer's request for documentation regarding her medical certification for her FMLA request. Plaintiff has additionally failed to provide facts concerning why she believes her termination was based on a discriminatory or retaliatory reason under either the FMLA, Title VII or the ADA. Plaintiff should consequently amend her complaint to address these issues.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall provide Plaintiff with copies of the Court's Employment Discrimination Complaint-form and a blank Application to Proceed in District Court Without Prepaying Fees or Costs.

**IT IS FURTHER ORDERED** that Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs [ECF No. 1] is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that no later than **June 15, 2026**, Plaintiff must file a signed Application to Proceed in District Court Without Prepaying Fees or Costs or pay the full $405 filing fee.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint [ECF No. 1] is **STRICKEN** because it does not contain an original signature.

**IT IS FURTHER ORDERED** that no later than **June 15, 2026**, Plaintiff shall file an Amended Complaint on the Court's Employment Discrimination Court form. Plaintiff must sign the Amended Complaint in compliance with Federal Rule of Civil Procedure 11(a).

**IT IS FURTHER ORDERED** that Plaintiff shall attach to her form Amended Complaint, no later than June 15, 2026, copies of her EEOC Charge of Discrimination and EEOC Right to Sue Letter.

**IT IS FURTHER ORDERED** that no later than **June 15, 2026**, Plaintiff must file a Memorandum with the Court addressing whether this Court has proper venue over this action.

**IT IS FURTHER ORDERED** that if Plaintiff fails to comply with this Order in all relevant aspects, the Court will dismiss this action, without prejudice.

Dated this 15th day of May, 2026.

/s/ John M. Bodenhausen
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

-21-